UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:22-23232-CIV-WILLIAMS/REID

GARY CATENAC, AYANA KNOWLES, FRANK HAMMOND, ALEXANDER OKWALI, and, HARRY GARCIA individually and as representatives of a class of participants and beneficiaries on behalf of the Lennar Corporation 401(K) Plan,

          Plaintiffs,

vs.

LENNAR CORPORATION,

          Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF CATENAC'S CLAIM PURSUANT TO RULE 12(b)(1)**

Plaintiffs, Gary Catenac, Ayana Knowles, Frank Hammond, Alexander Okwali, and Harry Garcia (collectively "Plaintiffs"), respectfully file this response in opposition to Defendant Lennar Corporation's Motion to Compel Arbitration Or in the Alternative to Dismiss Plaintiff Catenac's Claim Pursuant to Rule 12(b)(1) ("Defendant's Motion"). (Doc. 23). Defendant's Motion should be denied for the reasons set out below.

**SUMMARY OF RESPONSE**

The arbitration provision is invalid because it prospectively eliminates Plaintiffs' ERISA-protected statutory remedies. The Supreme Court authority establishes claims under ERISA section 502(a)(2) are "brought in a representative capacity on behalf of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9; *See also Pantoja v. Edward Zengel & Son Exp., Inc*., No. 10-20663-CIV, 2011 WL 7657382, at *8 (S.D. Fla. Aug. 5, 2011). Defined contribution plans, such as the Lennar 4011(k) plan, are included. *See LaRue v. DeWolff,*

*Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). Specifically, § 502(a)(2) authorizes participants to bring an action to recover, *inter alia*, "any losses to the plan" resulting from a fiduciary breach, and to seek "removal of such fiduciary." 29 U.S.C. §§ 1132(a)(2), 1109(a). Actions are brought on the Plan's behalf, seeking to recover for the Plan's benefit "all losses" suffered by the Plan. In this action, Plaintiffs pursue § 502(a)(2) claims seeking to hold Defendant accountable for its imprudence and breach of its fiduciary duties, including recovery of the Plan's monetary loss, removal of the Plan's fiduciaries, and reformation of the Plan.

ERISA § 502(a) provides Plaintiffs the opportunity to recover "any losses to the Plan." Lennar's attempt to compel Plaintiffs to individual arbitrations, limited to each of his/her individual losses. By any measure, a successful recovery by one individual of a tiny fraction of the Plan's aggregate loss is not the same as the recovery of "any" plan losses as permitted by the plain language of § 502(a)(2). By limiting participants to individual recoveries, the arbitration provision runs afoul of the "effective vindication" doctrine, rendering it entirely unenforceable.

Alternatively, mutual consent is foundational to the Federal Arbitration Act. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) ("Arbitration is strictly a matter of consent."). Here, although Plaintiffs bring this action on behalf of the Plan, they cannot be compelled to arbitrate because they never agreed to it. Moreover, three of the five plaintiffs, Frank Hammond, Alexander Okwali, and Harry Garcia, were no longer participants when the arbitration policy and class waiver were implemented. Moreover, Lennar never notified any of them that the Plan had purportedly been amended to strip them of the right to pursue court actions in court.

Section 1132(a)(2) allows recovery for a "plan" and does not provide a remedy for individual injuries distinct from plan injuries. Here, Defendant's conduct caused the Plan to suffer millions of dollars in losses. The Plan continues suffering economic losses, and those injuries may

be redressed by a judgment of this Court in favor of Plaintiffs and the Plan. That is more than sufficient for Article III standing purposes. To the extent Plaintiff Catenac must also show an individual injury, he has standing because he participated in the Plan and suffered similar economic injury.

Mr. Catenac's claims arise after the effective date of the general release agreement. Basic contract law holds Plaintiff Catenac's remain viable – a release of claims "up through the date of the agreement" does not release claims arising after the date of the agreement.

## PROCEDURAL OVERVIEW AND SUPPORTING FACTS

1. Plaintiffs Gary Catenac and Ayana Knowles originally filed this action on October 5, 2022. (Doc. 1). On January 12, 2023, he Amended Complaint was filed, adding Plaintiffs Frank Hammond, Alexander Okwali, and Harry Garcia. (Doc. 19).

2. Plaintiffs' First Amended Complaint alleges, among other things, that Defendant breached its fiduciary duties under ERISA, resulting in significant economic damages to the Lennar retirement plan. Plaintiffs seek relief for and on behalf of the Plan under 29 U.S.C. §§ 1109(a) and 1132(a)(2).

3. Pending before the Court is Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss as to Plaintiff Gary Catenac. (Doc. 23).

4. The arbitration provision Lennar seeks to enforce here, available at Doc. 14-2, p. 6, reads as follows:

> Any claim, dispute, or controversy of any kind asserted by a current or former participant, current or former beneficiary, current or former fiduciary, alternate payee, or any of their respective assignees, agents, representatives, assigns, trustees, receivers, or anyone acting on their behalf (collectively referred to as 'Claimant' in this Subsection) that arises out of, implicates, and/or relates to the Plan, including, without limitation, any: (a) claim for benefits under the Plan pursuant to ERISA Section 502(a)(1)(B) (following any required exhaustion of administrative

remedies); (b) claim pursuant to ERISA Section 502(a)(2); or (c) claim pursuant to ERISA Section 502(a)(3); (d) claim for any ERISA statutory violation of any kind, including for failure to timely provide notices, documents or information required by ERISA, pursuant to ERISA Section 502(c); or (e) claim under any other body of law (collectively 'Claim'), will be referred to and finally resolved by confidential binding arbitration.

5. The class waiver Lennar seeks to enforce, available at Doc. 14-2, pp. 8-9, reads as follows:

   i. The Claimant and any actual or purported participant, beneficiary, assignee, agent, or representative, may not bring a representative, class, or collective action on behalf of any others, including without limitation other Claimants, participants, or beneficiaries. Any Claim in arbitration must be brought on an individual basis. Furthermore, the Arbitrator and/or the AAA may not consolidate or join any claims without the express consent of all parties.

   ii. Arbitrator(s) shall have the authority to award monetary relief solely with respect to any alleged monetary losses in the individual Claimant's individual defined contribution account under the Plan and may not award monetary relief to or for the benefit of any other participants or beneficiaries. With respect to any Claim brought under ERISA Section 502(a)(2) and/or ERISA Section 409, a Claimant may obtain losses to the Plan measured by the alleged monetary losses to the individual Claimant's individual defined contribution account. The Claimant waives, forfeits, and forever relinquishes the right to bring a Claim for monetary damages, losses, or injury to any individual Plan account other than the Claimant's account.

   (iii) With respect to equitable, injunctive, and non-monetary relief that may be available under ERISA, to the fullest extent permitted by ERISA, the Arbitrator(s) must limit such relief solely to the individual Claimant. If any portion of the Arbitration provision or Class Action Waiver is found to prohibit a Claimant from obtaining any relief under ERISA that the Claimant would be able to obtain on an individual basis, the Arbitration provision and Class Action Waiver shall not be deemed void; rather, the Arbitrator(s) shall have the authority to award such relief.

6. Neither of these provisions are enforceable. Both are invalid as a matter of law. Defendant's Motion should be denied accordingly.

4

## MEMORANDUM OF LAW

I. **Legal Standard.**

To determine whether an issue in a suit or proceeding is "referable to arbitration" within the meaning of the FAA, courts "must consider two 'gateway' questions: (1) 'whether the parties have a valid arbitration agreement at all' (i.e., its enforceability), and (2) 'whether a concededly binding arbitration clause applies to a certain type of controversy' (i.e., its scope)." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416–17 (2019). "Enforceability" is a question of whether the Federal Arbitration Act ("FAA") requires enforcement of the relevant arbitration provision. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019); 9 U.S.C. § 2. The Supreme Court has never held the FAA requires courts to enforce any and every provision in an agreement just because it's titled "Arbitration Agreement." *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 n.5 (2022) (explaining that the FAA "requires only the enforcement of 'provision[s]' to settle a controversy 'by arbitration,' and not any provision that happens to appear in a contract that features an arbitration clause" (quoting 9 U.S.C. § 2). More specifically, the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Id.* at 1919 (emphasis added) ("An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed.")

II. **Arbitration Provisions Waiving Statutory Rights Are Invalid.**

ERISA mandates an arbitration provision that eliminates the right to pursue a remedy provided by ERISA is invalid. 29 U.S.C. § 1110(a) ("[A]ny provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."). Similarly, the Supreme Court has explained, an arbitration provision is invalid—as a matter of

law—if it acts as a "'prospective waiver of a party's right to pursue statutory remedies.'" *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (quoting *Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth, Inc.*, 473 U.S. 613, 637 n.19 (1985)) (emphasis in original). And "[t]hat would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id.*; *see 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) ("[A] substantive waiver of federally protected civil rights will not be upheld."). The plaintiff must be able to "effectively . . . vindicate its statutory cause of action," so "the statute will continue to serve both its remedial and deterrent function."); *Mitsubishi Motors*, 473 U.S. at 637; *see also Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054 (11th Cir. 1998)(holding that District Court correctly refused to compel arbitration of Title VII claim based, in part, on fact that arbitration agreement improperly limited damages made available by statute).

Defendant's [outdated] authority consists primarily of actions involving individualized arbitration. (*See* Doc. 23, pp. 12-16). In fact, Defendant mis-frames the arbitration provision as effecting participants "procedurally." But that's only half the story – by limiting Plaintiffs' ability to seek collective relief on behalf of the Plan, it deprives them of their *substantive* ERISA rights and remedies. ERISA provides participants broad remedies for fiduciary and party-in-interest violations, including the right to seek a variety of remedies on behalf of the entire plan. Section 1109(a) provides a plan fiduciary who breaches its fiduciary duties is liable "**to such plan**" for "**any losses to the plan**." 29 U.S.C. § 1109(a)(emphasis added). The equitable remedy of removal of a plan fiduciary is also contemplated. (Id.) An "action may be brought . . .(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2).   .

In this case, Plaintiffs allege Defendant violated its ERISA's duty of prudence in three important ways. First, Defendant caused the Plan and its participants to pay Prudential excessive and unreasonable fees for administrative services. (Doc. 19, ¶¶ 8, 83-123). Second, Defendant violated its duty of prudence by selecting and retaining on the Plan investment menu the Prudential Stable Value Fund, a fund which consistently underperformed. (Doc. 19, ¶¶ 9, 124-158). Third, Defendant never monitored, tracked, negotiated, or factored the amount of float income that Prudential was receiving from Plan participants when assessing Prudential's compensation from the Plan. (Doc. 19, ¶¶ 10-11, 75, 98, 103-106).

Plaintiffs seek remedies "on behalf of the Plan" under §§ 1132(a)(2) and 1109(a), and includes a prayer for relief asking the Court: "[f]ind and adjudge that Defendant is personally liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty." (Doc. 19, pp. 44, ¶ 2). Plaintiffs also seek to "[r]eform the Plan to include only prudent investments," and "[r]eform[ation] the Plan to obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses." (Doc. 19, pp. 45, ¶¶ 7-8). Not only that, the First Amended Complaint seeks to "[r]emove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations." (Doc. 19, pp. 45, ¶ 5). Contrary to Defendant's Motion, the arbitration procedure in the Lennar Plan "effects an 'elimination of [Plaintiffs'] right to pursue [those] remed[ies].'" *Williams*, 965 F.3d at 242 (quoting *Italian Case Colors*, 570 U.S. at 236). As such, it is unenforceable as a matter of law. *Id*.

**III.   The Lennar Plan Operates as a Prospective Waiver of Plaintiffs' Substantive ERISA Rights.**

The Lennar Plan Arbitration Provision requires all "current or former participant, current or former beneficiary, current or former fiduciary, alternate payee, or any of their respective

7

assignees, agents, representatives, assigns, trustees, receivers, or anyone acting on their behalf" to resolve all claims arising under the Plan, including ERISA breach of fiduciary duty claims, according to the arbitration procedure set forth in the Arbitration Amendment. (*See* Doc. 14-2, p. 6). Claims under §§ 1109(a) and 1132(a)(2) are covered and are therefore subject to the arbitration procedure.

The Lennar Arbitration Amendment also makes clear that "[a]ny Claim in arbitration must be brought on an individual basis." (Doc. 14-2, p. 9, Arbitration Amendment, Section 10.12(J)(l)(i)). It further says that "[w]ith respect to any Claim brought under ERISA Section 502(a)(2) and/or ERISA Section 409, a Claimant may obtain losses to the Plan measured by the alleged monetary losses to the individual defined contribution account." (*Id*. at Section 10.12(J)(l)(ii)). The Lennar Plan's Arbitration Amended mandates "the Claimant waives, forfeits, and forever relinquishes the right to bring a Claim for monetary damages, losses, or injury to any individual Plan account other than the Claimant's account." (*Id*.)Over the last decade, multiple federal appellate courts have permitted participants in defined contribution plans to recover "all" losses to a Plan resulting from fiduciary breaches. *Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc*., 710 F.3d 57, 65 (2d Cir. 2013) (in claims involving a defined contribution plan, "recoupment of losses to the Plan" was an appropriate remedy "for the benefit of the Plan as a whole"); *Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A*., 919 F.3d 763, 782 (4th Cir. 2019), as amended (Mar. 22, 2019) (ESOP participants entitled "to compensation for the loss from the overpayment" for ESOP assets); *Munro v. Univ. of S. California*, 896 F.3d 1088, 1094 (9th Cir. 2018) (participants in defined contribution plans entitled to "seek financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries"); *Spano v. The Boeing Co*., 633 F.3d 574, 586 (7th Cir. 2011)

(recognizing the possibility of "plan losses in a defined-contribution setting" resulting from alleged fiduciary breaches involving excessive fees and selection of investment options).

Section 10.12 of the Arbitration Amendment eliminates Plaintiffs' right to seek monetary relief to make the Plan whole.  The elimination of Plaintiffs' right to seek plan-wide monetary relief is an impermissible prospective waiver of their right to the statutory remedy provided by §§ 1109(a) and 1132(a)(2), and is, therefore, unenforceable as a matter of law.  Simply put, ERISA gives plan beneficiaries the right to sue on behalf of a plan and recover plan-wide damages for a breach of fiduciary duty. 29 U.S.C. §§ 1109(a), 1132(a)(2). But what ERISA provides in terms of relief, the Lennar Arbitration Amendment purports to take away - it prohibits beneficiaries from suing on behalf of the Plan and the recovery of plan-wide economic damages. The arbitration provision thus eliminates a right to pursue a remedy provided by a federal statute, making it unenforceable as a matter of law.

There is no Eleventh Circuit authority directly on point.  However, two recent appellate court decisions provide guidance.  In *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors,* 59 F.4th 1090, 1110 (10th Cir. 2023), the Tenth Circuit affirmed the denial of a similar motion to compel arbitration in an ERISA class action case.  Notably, in *Harrison*, the United States Department of Labor ("DOL") filed an amicus brief supporting Plaintiffs' position in this action.[1] And the Sixth Circuit recently explained, "it is the plan that takes legal claim to the recovery, suggesting that the claim really 'belongs' to the Plan. And because § 502(a)(2) claims 'belong' to the Plan, an arbitration agreement that binds only individual participants cannot bring such claims into arbitration." *Hawkins v. Cintas Corp.*, 32 F.4th 625, 633 (6th Cir. 2022), *cert. denied*, No. 22-226, 2023 WL 124031 (U.S. Jan. 9, 2023).

---

[1] A copy of the DOL's amicus brief from *Harrison* is attached as Exhibit A.

Defendant's Motion relies heavily on *Holmes v. Baptist Health S. Fla. Inc.*, No. 21-22986-Civ, 2022 WL 180638 (S.D. Fla. Jan 20, 2022).  However, *Holmes* was decided months <u>before</u> *Harrison* and *Hawkins* were published.  Thus, it is reasonable to surmise *Holmes* would have been decided differently if the guidance provided by *Harrison* and *Hawkins* had been available.  When *Harrison*, *Hawkins* and the DOL amicus brief are taken into consideration, *Holmes* is an outlier.  Thus, the Court should favor the DOL's guidance and Circuit Court authority over *Holmes*.

Plaintiff's argument is simple – the unambiguous statutory language of ERISA allows a single plaintiff to obtain plan-wide relief. That statutory language distinguishes this action from Defendant's cited authority. For example, Defendant's Motion relies heavily on *Epic Systems*.  In that case, the Supreme Court considered the enforceability of arbitration agreements that contained a class action waiver, which operated to prohibit the plaintiff from utilizing the class action procedural device to aggregate his individual claims with the claims of other similarly situated individuals. *See Viking River*, 142 S. Ct. at 1920 (explaining that "class-action procedure allows courts to use a representative plaintiff's individual claim as a basis to adjudicate the individual claims of multiple parties at once, instead of in separate suits" (cleaned up)).  In *Epic Systems*, the arbitration agreement did not prevent the plaintiff from vindicating his substantive right to the individual remedy provided by the relevant statute.  *See Epic Sys.*, 138 S. Ct. at 1621 (explaining that the FAA "seems to protect pretty absolutely" an arbitration agreement requiring "individualized rather than class or collective action procedures" to resolve an individual employee's Fair Labor Standards Act claim).

Here, Plaintiffs are not trying to aggregate their individual claims with the individual claims of other Lennar Plan beneficiaries. Plaintiffs are asserting a breach of fiduciary duty claim on behalf of the *entire* Lennar Plan, and they seek a Plan-wide remedy, as expressly provided by

10

ERISA. Unlike the class action waiver at issue in *Epic Systems*, the arbitration provision here does not merely change the manner in which Plaintiffs' individual claims are decided – it changes the nature of the substantive remedy provided by the statute. Specifically, it deprives Plaintiffs of the right to seek the statutory remedy of plan-wide monetary relief. For instance, the Seventh Circuit concluded a nearly identical arbitration provision was unenforceable because it prohibited equitable remedies that ERISA expressly permits. *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613 (7th Cir. 2021). The *Smith* court (unlike Defendant here) interpreted the arbitration provision at issue to preclude a participant from seeking the remedy of fiduciary removal, a remedy authorized by § 1109(a). The Seventh Circuit held that the provision operated as a "prospective waiver of a party's right to pursue statutory remedies" and was, thus, invalid. *Id*. at 621 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19).

Similarly, in *Cedeno v. Argent Trust Co.*, No. 20-9987, 2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021), the court held that a nearly identical arbitration procedure in an ESOP plan document was unenforceable because it disallowed plan-wide relief under §§ 1109(a) and 1132(a)(2). *Cedeno*, 2021 WL 5087898, at *4 (holding that an arbitration provision limiting a prospective plaintiff's relief to losses to his own individual account "is invalid and unenforceable because it purports to limit the available remedies that ERISA explicitly provides"). And there is more. The day before this response was filed, in *Burnett v. Prudent Fiduciary Servs. LLC*, No. 22-cv-270-RGA-JLH, 2023, the court adopted a Report and Recommendation that recommended as follows: "Although § 1132(a)(2) permits plan beneficiaries such as Plaintiffs to seek relief on behalf of the plan as a whole, the arbitration provision at issue in this case purports to bar Plaintiffs from seeking relief for the plan as a whole. Because that portion of the arbitration provision is invalid and is not severable from the remainder of the arbitration provision, Defendants' motion to compel

11

arbitration should be DENIED." *See Burnett v. Prudent Fiduciary Servs. LLC*, No. 22-cv-270-RGA-JLH (D. Del. March 8, 2023, Doc. 59)(adopting *Burnett v. Prudent Fiduciary Servs. LLC*, No. 22-cv-270-RGA-JLH, 2023 WL 387586, at *1 (D. Del. Jan. 25, 2023); *see also Lloyd v. Argent Tr. Co.*, No. 22CV4129 (DLC), 2022 WL 17542071, at *3 (S.D.N.Y. Dec. 6, 2022) (the court denied a motion to compel arbitration in an ERISA case based, in part, on the fact that the arbitration provision precluded remedies that ERISA expressly authorizes).

In sum, the Lennar Arbitration Amendment is invalid as matter of law because it robs Plaintiffs of rights Congress expressly provided to them under ERISA. Because the Supreme Court has long held that an arbitration clause may not be enforced if it eliminates "a party's right to pursue statutory remedies" or "forbid[s] the assertion of certain statutory rights." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (citation omitted), the Court should deny Defendant's Motion.

## IV. The Timing Demonstrates Plaintiffs Never Consented to Arbitration.

Under the FAA, parties "cannot be forced to submit to arbitration if they have not agreed to do so." *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1339 (M.D. Ala. 2014) (quoting *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)). This is true regardless of whether Florida contract law,[2] or federal common law,[3] is applied because the requirement of consent is embedded in the FAA. As the party seeking to compel arbitration, must prove by a preponderance of the evidence that an arbitration agreement exists. *See Seth v.*

---

[2] State law governs whether an enforceable agreement to arbitrate exists. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329-30 (11th Cir. 2016).

[3] In this Circuit, "the interpretation of ERISA-governed contracts is guided by a body of federal common law," but courts will look to state contract law for additional guidance. *Shaw Grp., Inc. v. K.M. ex rel. Moore*, No. 1:09-CV-3125-WSD, 2011 WL 13274236, at *6 (N.D. Ga. Feb. 28, 2011).

*Rajagopalan*, No. 12-Civ-61040, 2013 U.S. Dist. LEXIS 199810, at *21 (S.D. Fla. Jan. 25, 2013). Defendant has failed to meet its burden. Defendant has not produced a signed arbitration agreement or any evidence the Plaintiffs were even aware of the arbitration provision. There is no evidence Plaintiffs were notified the Plan had been amended to include arbitration or consented in any way to arbitrate claims. To bind Plaintiffs to an undisclosed arbitration agreement to which they are not parties would be contrary to the fundamental principle that arbitration is a matter of consent. Nothing in ERISA somehow displaces the "consent" requirement. Without Plaintiffs' consent, there is no enforceable agreement to arbitrate. [4]

On July 19, 2022, as part of the extensive pre-litigation investigative phase of this lawsuit conducted by the undersigned, Plaintiffs' counsel reached out to Defendant and requested certain information pursuant to ERISA, Section 1024(b). (Doc. 19, ¶ 47). Lennar's September 15, 2022, response was silent on whether the Plan required arbitration. (Doc. 19, ¶ 47). Presumably, Lennar deduced it might be held accountable for ERISA violations and forcibly imposed arbitration on the Plan. *See* (Doc. 19, ¶¶ 47-60). Plaintiffs filed this lawsuit on October 5, 2022, without any knowledge of any purported arbitration requirement. (Doc. 19, ¶ 49). Magically, on October 10, 2022, Defendant's prior counsel informed Plaintiff's counsel, "[p]ursuant to ERISA Section 1024(b)(4), enclosed please find the Fourth Amendment to the Plan, which was just recently executed." (Doc. 19, ¶ 50). That document purports to retroactively amend the Plan to include a mandatory arbitration policy effective January 1, 2022 ("the Arbitration Amendment"). (*See* Doc. 19, ¶ 50, citing to 14-2, pp. 2-14). However, the arbitration policy and class action waiver cannot

---

[4] Plaintiffs, Frank Hammond, Alexander Okwali were not employed by Lennar or Plan participants when the arbitration policy and class waiver incorporated into the Plan, as such, never had access to Plan documents.

possibly cover claims arising prior to January 1, 2022, including and especially as to claims for relief made by Plaintiffs on behalf of the Plan as a whole.

Nonetheless, Defendant's Motion argues that "the arbitration provisions set forth in the Plan are valid and binding on Plaintiffs because the Plan consented to them." (Doc. 23, p. 15). But there is no merit to Defendant's position that ERISA—a remedial statute enacted by Congress to help employees, like the Plaintiffs, to protect their retirement benefits—somehow dispenses with the FAA's consent requirement by allowing Plan fiduciaries to impose arbitration on unsuspecting participants, including former participants who no longer have access to Plan documents. There exists no ERISA exception to the long-established legal mandate that arbitration is a matter of consent.

Defendant argues that ERISA plan provisions must be enforced as written, regardless of the participant's notice or consent. (Doc. 23, pp. 16-19). According to Defendant, when the Plan's Administrative Committee and Lennar adopted the Plan Document (presumably because Lennar wanted to minimize its own liability after receiving Plaintiffs' counsel's pre-suit letter request for information), that was it—this unilateral, self-serving action by Defendant decided for the Plan and participants suing on the Plan's behalf whether to arbitrate claims against Defendant. However, the FAA rejects arbitration through coercion. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 681, 130 S. Ct. 1758, 1773, 176 L. Ed. 2d 605 (2010) ("arbitration 'is a matter of consent, not coercion'"). In fact, ERISA's representative action provision is designed to prevent collusion between the Defendant, the Plan, and the people who control both. *See, e.g., Smith v. Greatbanc Tr. Co.*, No. 20-C-2350, 2020 WL 4926560, at *3 (N.D. Ill. Aug. 21, 2020) ("'Allowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty

14

would, in a sense, be allowing the fox to guard the henhouse.'") (citation omitted), aff'd, 13 F.4th 613.

Defendant further posits that "the arbitration provisions set forth in the Plan are valid and binding on Plaintiffs because the Plan consented to them." (Doc. 23, p. 15). Relying on *Holmes,* Defendant argues whether participants consented to arbitration is irrelevant – only the Plan's consent is required. Defendant is mistaken. An ERISA plan participant that sues on behalf of the plan still maintains a personal stake in a § 1132(a)(2) claim—and thus cannot be forced to arbitrate—even if the plan agrees. *See, e.g., Comer v. Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006) ("an ERISA claimant also sues in a non-derivative capacity"); *see also Dorman v. Charles Schwab & Co.,* No. 17-CV-00285-CW, 2018 WL 467357, at *5 (N.D. Cal. Jan. 18, 2018), *rev'd sub nom. Dorman*, 780 F. App'x 510; "[T]he Plan Document was executed unilaterally by the plan sponsor.... A plan document drafted by fiduciaries—the very people whose actions have been called into question by the lawsuit—should not prevent plan participants and beneficiaries from vindicating their rights in court.") Under the plain language of ERISA's text, the cause of action is personal to Plaintiffs, even though they seek relief for the Plan. 29 U.S.C. § 1132(a)(2). Accordingly, contrary to Defendant's Motion, Plaintiffs seek to vindicate a personal statutory right while suing on the Plan's behalf. *See Russell*, 473 U.S. at 142 n.9 (noting that despite suing "in a representative capacity on behalf of the plan," participants have a "common interest shared by all four classes [of plaintiffs authorized to sue under § 1132(a)(2)] in the financial integrity of the plan"). Therefore, Plaintiffs' consent is required before an arbitration provision is enforceable. No such consent was ever given by Plaintiffs, much less proven by a preponderance of the evidence by Defendant.

15

In sum, injuries to a defined contribution plan, like those alleged by Plaintiffs here, are participant injuries. Participants cannot be deprived of their statutory right to seek relief for such injuries in a judicial forum without their consent. Defendant's Motion should be denied.

### V.      **Plaintiff Gary Catenac.**

Defendant's Motion takes two parting shots at Plaintiff Catenac. (Doc. 23, pp. 17-20). Specifically, Defendant alleges Mr. Catenac somehow lacks Article III standing to challenge the "Lennar" Prudential Stable Value Fund. Separately, Defendant argues that Mr. Catenac's claim independently fails because he released his claim through a separation agreement with Lennar in May 2021. Both arguments are easily refuted.

Under settled precedent, the "irreducible constitutional minimum" of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiff Catenac has satisfied each of the three elements. Beginning with the first, "[a]n injury-in-fact must be both (1) particularized ('affect the plaintiff in a personal and individual way') and (2) concrete ('real, and not abstract')." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)). An economic injury "is the epitome of 'concrete.' " *Id*. As explained above, §1132(a)(2) allows recovery for a "plan" and does not provide a remedy for individual injuries distinct from plan injuries. Here, the Plan suffered millions of dollars in economic losses (element one), which were caused by Defendant's fiduciary breaches (element two). The Plan continues suffering economic losses, and those injuries may be redressed by a judgment of this Court in favor of Plaintiffs and the Plan (element three). That is more than sufficient for Article III standing purposes. *See, e.g., Huang v.*

*TriNet HR III, Inc.*, No. 8:20-CV-2293-VMC-TGW, 2022 WL 13631836, at *5 (M.D. Fla. Oct. 21, 2022)(finding Article III standing in retirement plan case based, in part, on allegations where the "challenge is to the defendants' general practices affecting all plans.").

To the extent Plaintiff Catenac must also show an individual injury, he has standing because he participated in the Plan and suffered economic injury (element one) caused by (element two) Defendant's unlawful conduct. The First Amended Complaint specifically alleges each of the Plaintiffs' individual accounts in the Plan which, by definition, includes Mr. Catenac's account, suffered losses when it was assessed an excessive amount for administrative fees. (Doc. 19, ¶ 34). Those fees were would not have been incurred had Defendant discharged its fiduciary duties to the Plan and reduced those fees to a reasonable level. (Doc. 19, ¶ 34). Those injuries may be redressed by a judgment of this Court in favor of Plaintiffs and the Plan (element three). (Doc. 19, ¶¶ 30-32). Such allegations are sufficient for Article III standing purposes.

Defendant attempts to overcome these insurmountable facts by arguing "Plaintiff Catenac's claim must be dismissed in so far as it challenges the 'Lennar' Prudential Stable Value Fund because the Court lacks subject matter jurisdiction over that claim." (Doc. 23, p. 17). However, the Court should reject this argument. Mr. Catenac unquestionably has standing by virtue of the well-pleaded allegations demonstrating he suffered economic injury caused by Defendant's imprudent actions resulting in the Plan, and Mr. Catenac's own retirement account, paying excessive recordkeeping fees. Neither Mr. Catenac, nor any other Plaintiff, need have suffered every injury at issue in the First Amended Complaint to have constitutional standing. One concrete injury suffices.

Finally, Defendant argues Plaintiff Catenac's claims are barred by a Release Agreement. (*see* Doc. 23, p. 20). However, its argument ignores basic contract principles. Mr. Catenac's May

24, 2021, agreement releases Lennar from all claims from all claims, "up through the date of th[e] agreement." (Doc. 14-4, p. 10). However, Mr. Catenac is still invested in the Plan, and has suffered losses after May 24, 2021. Under no interpretation of the release can it be said to encompass claims for post-May 24, 2021, losses.

**VI.  Conclusion.**

Based upon the foregoing reasons, Lennar's Motion should be denied.

Dated this 9th day of March, 2023.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
Direct Dial: 813-379-2560
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com

and

**MARC R. EDELMAN**
Florida Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL  33602
Telephone:  813-223-5505
Facsimile:  813-257-0572
Email: medelman@forthepeople.com
***Attorneys for Plaintiffs and the Proposed Class***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of March, 2023, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system. I further certify that a true and correct copy of the foregoing document will be served with the Complaint.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**